# ROSE SHOE MANUFACTURING CO. *v.* ROSENBUSH.

---

TRADEMARKS; PRIORITY OF ADOPTION AND USE.

Where, in a trademark interference case, the application of the junior party alleged a continuous use since 1891, and the application of the senior party a continuous use since 1900, and the testimony of the junior party showed the earliest date of his use to have been 1895,

while the testimony on behalf of the senior party, by disinterested and credible witnesses, showed a continuous use since 1894 at least, and the giving of a subsequent date in his application was satisfactorily explained,—it was *held,* reversing a decision of the Commissioner of Patents, that the senior party was entitled to an award of priority of adoption and use.

No. 396.   Submitted November 22, 1906.   Decided December 4, 1906.

HEARING on an appeal from a decision of the Commissioner of Patents in a trademark interference proceeding.

*Reversed.*

The COURT in the opinion stated the facts as follows:

Hearing on an appeal from a decision of the Commissioner of Patents in a trademark interference case.

The issue is the word "Rose" as a trademark for shoes.  The Rose Shoe Manufacturing Company, of Rochester, New York, the senior party, and appellant here, registered this mark July 21, 1905, and the application of A. A. Rosenbush & Company, the appellee, was filed July 22, 1905.  An interference was duly declared, testimony in the form of depositions taken by both parties, and priority of adoption and use awarded appellant by the Examiner of Interferences.  From this decision an appeal was taken to the Commissioner of Patents, who reversed the decision of the Examiner of Interferences, and awarded priority of adoption and use to appellee.  The decision of the Commissioner is here challenged.

A. A. Rosenbush, a partner in the firm of A. A. Rosenbush & Company, of Boston, Massachusetts, about August 1, 1894, formed a partnership at Chicago, Illinois, with Samuel Goldsmith and Jerome M. Levie, under the firm name of Goldsmith, Rosenbush, & Levie, and engaged in the wholesale boot and shoe business in Chicago.  Rosenbush testified that the firm first used the word "Rose" as a trademark "in the spring of 1895," and that the word was thereafter continuously used "to the spring of '98."  In November, 1898, Rosenbush purchased the stock, fixtures, and goodwill of the firm, and removed to

Boston. Shortly thereafter he opened a place of business in Boston, and continued the use of the word "Rose" as a trademark down to the time when he sought its registry. His testimony as to the use of the word as a trademark in Boston is corroborated by other witnesses, and we find no difficulty on that point. The deposition of his former partner, Levie, was taken in Chicago, and he was asked "whether or not Goldsmith, Rosenbush, & Levie used any trademarks upon the shoes sold by them?" He answered: "Some." He was then asked what trademarks they used, and to this he replied: "Well, we used the name 'Waddell,' used the name 'Rose,' and several others." He was asked when the firm first used the name "Rose" as a trademark, and he answered: "Can't tell exactly—haven't any data to go by. It was between 1894 and 1898." When asked if he could tell whether it was nearer 1894 than 1898, he said: "Well, yes, it was about a year or a year and a half after we started in business." On cross-examination he was asked: "About how many other trademarks did you use besides the words 'Rose' and 'Waddell'?" and replied: "Not over half a dozen, they changed from time to time. The merchandise would not market, and we would have to change them."

In the above application for registry of A. A. Rosenbush & Company, the truth of the statements therein being sworn to by A. A. Rosenbush, it is stated that "the trademark has been continuously used in our business since the year 1891."

In the application of the appellant it is stated that "this trademark has been continuously used in business by said corporation and in the business of M. J. Whitman Company, from whom title is derived, since the 1st day of March, 1900." Charles A. Rooker, the secretary and treasurer of the Rose Shoe Manufacturing Company, was asked why he did not give an earlier date, and replied as follows: "I simply gave 1900 from my personal knowledge, without any investigation or inquiry among my predecessors, as to the first use of the word 'Rose.' If I had been asked by my attorney to give an earlier date, I certainly could have done so." He further testified that the original company was known as S. Raubert &

Siebert, and that this company was succeeded by Siebert, Whitman, & Bartold, who were in turn succeeded by Siebert, Whitman, & Company, and they in turn by M. J. Whitman Company, the immediate predecessor of the Rose Shoe Manufacturing Company. Mr. Rooker was asked whether the trademark "Rose" was used on shoes sold by the predecessors of his company, and answered that shoes bearing that trademark were manufactured and sold by Siebert, Whitman, & Bartold, Siebert, Whitman, & Company, M. J. Whitman Company, and the Rose Shoe Manufacturing Company, and that Siebert, Whitman, & Bartold manufactured and sold the "Rose" shoe prior to 1899, when the firm changed to Siebert, Whitman, & Company.

John A. Levis, a paper-box manufacturer, of Rochester, testified that he had been making boxes and printing cartons bearing the word "Rose" for the Rose Shoe Manufacturing Company and its predecessors since 1896, when the firm name was Siebert, Whitman, & Bartold. Mr. Levis identified three cartons bearing the word "Rose" as having been printed by him for Siebert, Whitman, & Bartold.

Philip H. Leckinger, of Rochester, a salesman in the retail shoe store of his father, who had been a retail shoe dealer for forty-five years, testified that his father had bought shoes from Raubert & Siebert and all their successors down to the Rose Shoe Manufacturing Company, and that the trademark "Rose" was associated with these shoes.

Frank J. Nissen, of Port Clinton, Ohio, succeeded his father in 1901 in the retail boot and shoe business at that place. Mr. Nissen testified that he first bought shoes from the predecessors of the appellant when he started to manage his father's business in 1892, and that he had since continuously bought the "Rose" shoe. Mr. Nissen did not definitely state when the trademark "Rose" was first used on the shoes he purchased from the various predecessors of the appellant. He did, however, produce two shoes so marked, which were bought in 1900, and he testified that these were not the earliest shoes so marked which he had purchased.

Ferdinand Bartold testified that he was employed by Raubert & Siebert for five or six years prior to 1894; that in 1894 he became a member of the firm of Siebert, Whitman, & Bartold, which firm continued in business for about four years and a half, when it was succeeded by Siebert, Whitman, & Company, in whose employ and its successors, the M. J. Whitman Company and the Rose Shoe Manufacturing Company, he continued; and that each of these firms manufactured and sold shoes under the name "Rose." He testified further:

Q. By what name were the shoes manufactured by these various concerns known, and particularly Siebert, Whitman, & Bartold?

A. The name "Rose."

Q. Was the name used on the shoes?

A. Yes, sir.

Q. I hand you Exhibits "B" and "C," and ask you if the marks you find on those shoes are practically the same as originally used?

A. Yes, sir.

Q. Since your first connection with the "Rose" shoe, has the "Rose" shoe, to your personal knowledge, been continuously manufactured and sold by the Rose Shoe Company and their predecessors?

A. Yes, sir.

William J. Muckle, president of the Rose Shoe Manufacturing Company, testified that his knowledge of the company and its predecessors extended over a period of about eighteen years; that he was in the factory, saw the shoes made, and knew that they were manufactured and sold as the "Rose" shoe. He further testified that each of these companies had used the trademark "Rose" exclusively; and that over 90 per cent of the output of the factory contained that word as a trademark.

A Mr. Prusick, of Philadelphia, testified to buying the "Rose" shoe from these companies since April or May, 1898, but his testimony is not material here.

Both Mr. Rooker and Mr. Muckle testified that the appellant

and its predecessors had built up an extensive interstate and foreign business.

*Mr. Charles E. Foster* and *Mr. C. T. Belt* for the appellant.

*Mr. Louis H. Harriman* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

The sole issue is whether the adoption of this trademark by the appellant antedates its adoption by the appellee. Although Rosenbush, in his application, claimed 1891 as his date of adoption, the earliest date mentioned in his testimony is "the spring of 1895." His former partner, Levie, as we have seen, finally fixes the date as "about a year or a year and a half" after August 1, 1894, when the firm commenced business. From this testimony, and from this alone, we must find when appellee first used the word. Appellant, on the other hand, produced several credible witnesses who clearly traced the use of the word by Siebert, Whitman, & Bartold in 1894, and by all their various successors down to and including the Rose Shoe Manufacturing Company. The testimony of Mr. Leckinger is susceptible of no other reasonable construction than that he had been purchasing shoes containing the trademark "Rose" from these various companies for about nineteen years. Mr. Leckinger is an entirely disinterested witness, and his testimony must be given the weight to which it is entitled. Mr. Bartold, to be sure, is employed by the appellant, but his testimony, being consistent and reasonable, is certainly entitled to as much weight as the testimony of one of the parties. His testimony is clear and convincing that the word "Rose" has been used by the various companies since 1894 at least. Having been connected with these firms, either as a partner or as an employee, Mr. Bartold is in a position to intelligently testify concerning the subject-matter of this controversy. Mr. Muckle, the president of the company, and presumably a man of intelligence and character, testified, in effect, that the word "Rose" has been used by

his company and its predecessors for about eighteen years. His testimony is entitled to as much weight as the testimony of the appellee. These various firms occupied the same factory, and each manufactured ladies' shoes. It is reasonable to suppose that, once having adopted a trade name, they would continue its use notwithstanding a reorganization of the firm, and therefore the testimony of Mr. Bartold, that the name has been in continuous use since 1894, corroborated, as it is, by the testimony of the other witnesses, is not only reasonable, but, to our minds, conclusive as to when the mark was first adopted by appellant's predecessors.

A careful analysis of the whole evidence, we think, irresistibly leads to the conclusion that appellant adopted this mark prior to the date of its adoption by appellee, even though we accept the uncorroborated statement of Mr. Rosenbush that his predecessor first used the mark "in the spring of 1895."

It follows that the decision of the Commissioner must be reversed. The clerk of the court will certify this opinion, and the proceedings of this court in the premises, to the Commissioner of Patents, according to law.                    *Reversed.*